IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KOBER HANSSEN MITCHELL ARCHITECTS, INC., <br><br>                  Plaintiff, <br><br>       vs. <br><br> WILSON CARE HOME KAILUA, LLC <br><br>                Defendants. | CIVIL NO. 14-00479 DKW/BMK (Copyright) <br><br> **MEMORANDUM IN SUPPORT OF MOTION** |

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................1

II.  FACTUAL BACKGROUND......................................................................4

III.  LEGAL STANDARD ...........................................................................8

IV.  ARGUMENT.......................................................................................9

  A.  KHMA's Claims Are Barred by the Three-Year Statute of Limitations .........9

    1.  Count I of the Complaint Is Time-Barred ..................................................10

    2.  Count II of the Complaint Is Time-Barred.................................................10

  B.  KHMA Granted Wilson a Nonexclusive License to Use the Subject Plans in Order to Complete the Project, and therefore Cannot Maintain this Action..13

    1.  The Grant of a Non-Exclusive License Bars Count I of KHMA's Complaint ..................................................................................17

    2.  The Grant of a Non-Exclusive License Bars Count II of KHMA's Complaint ..................................................................................19

V.  CONCLUSION...........................................................................20

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................8, 9

*Asset Marketing Sys., Inc. v. Gagnon,* 542 F.3d 748 (9th Cir. 2008) ......................13

*Biro v. Conde Nast,* 883 F. Supp. 2d 441 (S.D.N.Y. 2012) .......................................4

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) .......................................................4

*Caraang v. PNC Mortgage*, 795 F. Supp. 2d 1098 (D. Haw. 2011) ........................4

*Effects Associates, Inc. v. Cohen,* 908 F.2d 555 (9th Cir. 1990) ............................13

*Foad Consulting Group v. Musil Govan Azzalino,* 270 F.3d 821 (9th Cir. 2001) ........................................................................... 14, 15, 16, 17

*Frost-Tsuji Architects v. Highway Inn, Inc.*, Civ. 13-00496 SOM/BMK, 2014 WL 4237285 (D. Haw. Aug. 26, 2014) ................ 13, 14, 15, 16, 17, 18, 20

*Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ..........................4

*Gamiao v. Bank of Am.*, 10-00311 DAE/KSC, 2011 WL 839757 (D. Haw. Mar. 4, 2011) .......................................................................................9

*I.A.E., Inc. v. Shaver*, 74 F.3d 768, 778 (7th Cir. 1996) .........................................18

*Imageline, Inc. v. CafePress.com, Inc.,* CV10-9794 PSG MANX, 2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) ...................................................19

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001) .........................................4

*Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) ...............................................9

*Newcomb v. Cambridge Home Loans, Inc.*, 861 F. Supp. 2d 1153 (D. Haw. 2012) .........................................................................................8

*Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131 (D. Haw. 2013) .........................................................................................4

*Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530 (9th Cir. 1984) .................8

*Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 1994) ...................... 9, 10

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) .........................................................4

*Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138 (S.D. Cal. 2007) .............................4

## Federal Statutes

17 U.S.C. § 1202(b)(1) .............................................................................................19

17 U.S.C. § 507(b) ....................................................................................................9

**Rules**

Fed. R. Evid. 201 ................................................................................................4

FRCP Rule 12(b)(6) ............................................................................................8

## MEMORANDUM IN SUPPORT OF MOTION

The underlying dispute between Plaintiff Kober Hanssen Mitchell Architects ("KHMA") and Defendant Wilson Care Home, LLC ("Wilson") is the subject of litigation in the Circuit Court of the First Circuit, State of Hawaii that has been pending since July of 2011 (the "State Court Action").[1]  This case is nothing more than an attempt to distract and wear down Wilson, at a time when the trial in the State Court Action is less than three months away.  KHMA's claims are frivolous and are time-barred.

## I.    INTRODUCTION

KHMA contracted to provide architectural and construction administration services to Wilson in connection with the construction of an adult residential care facility to be located at 96 Kaneohe Bay Drive in Kaneohe, Hawaii (the "Project"). As is asserted in KHMA's USDC Complaint, the parties intended that "KHMA would remain the Project's Architect of Record until the Project's completion." USDC Complaint at ¶ 19.  The Contract was executed on July 10, 2007.  By the Spring of 2011, the Project had faced significant difficulties, including major cost

---

[1] The State Court action includes (1) KHMA's claim for Wilson's alleged failure to pay $7,952.57 of the $240,000.00 that Wilson agreed to pay KHMA under the Contract (KHMA does not dispute that Wilson has paid KHMA no less than $232,047.43), (2) KHMA's claim that it is entitled to payment of $200,225.86 for "additional services" (despite its admission that there is no writing requesting or approving such additional services), and (3) Wilson's multi-million dollar claim for damages suffered as a result of negligent design and incompetent construction administration by KHMA.  Exs. 2-4.

1

overruns, delays, and construction defects that could have been avoided or mitigated had KHMA competently provided the services contracted for.  *See* Ex. 4. Construction on the Project reached substantial completion on April 29, 2011, but KHMA had not yet obtained a necessary permit for an enclosed stairwell.  Wilson therefore could not yet obtain a certificate of occupancy or open its business. Before the stairwell permit was obtained, KHMA abandoned the Project and filed a mechanics' lien due to Wilson's alleged non-payment.  Ex. 2.  Wilson had no choice but to retain a new architect, Pacific Asia Design Group, to obtain the stairwell permit.  USDC Complaint at ¶¶ 24-26.

KHMA's copyright claims in this action are subject to a three-year statute of limitations.  If Wilson's construction of the Project infringed on KHMA's alleged copyright (which it didn't), the alleged infringement occurred, and KHMA knew of the alleged infringement, no later than July 8, 2011, the date that it filed its mechanics' lien against the Project.

KHMA also alleges that Wilson removed KHMA's copyright management information ("CMI") from the plans that were submitted in order to obtain the stairwell permit—but the public record filings with the Department of Planning and Permitting ("DPP") show that Wilson applied for that permit (and submitted its plans) on ***September 20, 2011***.  Ex. 5.  Assuming KHMA's CMI was removed, it was removed prior to September 20, 2011.  KHMA either knew or should have

2

known that Wilson would need to submit permit drawings to DPP, and KHMA had actual or constructive knowledge of Wilson's preparation of the alleged infringing plans no later than September 20, 2011—the date that the allegedly infringing plans were submitted to DPP and made public.  Despite being embroiled in litigation since 2011, KHMA for some reason chose to not file this action until October 21, 2014,[2] more than three years after its copyright claims accrued. KHMA's claims are time-barred.

More fundamentally, KHMA cannot assert a viable copyright claim under these circumstances.   KHMA agreed to "[p]repare construction documents (drawings and specifications) for permit and construction," and agreed to "[p]rovide construction administration" on the Project.  Construction on the job was substantially complete (and KHMA admits that it was paid nearly 97% of the amount contracted for) before KHMA abandoned the Project.  Ex. 3 at ¶ 15. On the face of the USDC Complaint, the documents attached thereto and incorporated therein by reference, and the public record documents subject to judicial notice, this Court should recognize as a matter of law that KHMA granted Wilson a nonexclusive license to use the drawings at issue in order to obtain permits and complete construction of the Project.  Case law—from both the Ninth Circuit and

---

[2] Probably because the claims in this case are nothing more than a tactical move designed to gain some advantage by drawing Wilson's attention and resources away from the State Court Action.

this District—is crystal clear that no copyright claim lies where a nonexclusive license has been granted.   This case must be dismissed, in its entirety, with prejudice.

## II.   FACTUAL BACKGROUND

KHMA and Wilson entered into a contract that contemplated payments totaling $240,000.00.   There is nothing whatsoever in the Contract to suggest that KHMA would retain ownership of the plans, or that Wilson would not be allowed to use the plans for permitting and construction of the Project.   Ex. 1.[3]   To the contrary, the Contract expressly states that KHMA would prepare drawings and specifications "for permit and construction."   Ex. 1 at p. 2.   The **only** reasonable

---

[3] Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered on a motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1124 (9th Cir. 2002)); *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001); *Biro v. Conde Nast,* 883 F. Supp. 2d 441, 455 (S.D.N.Y. 2012); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138 (S.D. Cal. 2007).   Similarly, matters that are public record, are easily verifiable, and are not subject to reasonable dispute, are subject to judicial notice on a  motion to dismiss.   Wilson respectfully requests that the Court take judicial notice of the public record documents referenced herein pursuant to the Federal Rules of Evidence, Rule 201. See *Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131, 1143 (D. Haw. 2013) ("In the context of a motion to dismiss, a court may take judicial notice under Fed. R. Evid. 201 of 'matters of public record' without converting the motion to dismiss into a motion for summary judgment.") (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)); *Caraang v. PNC Mortgage*, 795 F. Supp. 2d 1098, 1113 (D. Haw. 2011) ("This Court may take judicial notice of any fact 'not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (quoting Fed. R. Evid. Rule 201(b)).

interpretation of this language is that the parties intended for Wilson to actually use the drawings and specifications for permitting and construction of the Project.

KHMA's State Court First Amended Complaint ("Complaint") admits that Wilson made payments in accordance with that Contract, with the exception of $7,952.57. Ex. 3 at ¶ 15. Although KHMA has made disputed claims alleging entitlement to payment in the amount of $200,225.86 for "additional services," KHMA admits that Wilson has paid KHMA no less than $232,047.43 on this Project. Ex. 3 at ¶ 15. Consistent with Wilson having paid nearly 97% of the amount owed to KHMA under the Contract, construction work on the Project had reached substantial completion prior to KHMA filing its mechanics' lien application.

On July 8, 2011, KHMA filed "Kober Hanssen Mitchell Architects, Inc.'s Application for Mechanic's and Materialmen's Lien and Demand for Payment" in the Circuit Court of the First Circuit, State of Hawaii. Ex. 2. In its mechanics' lien application, KHMA alleged that KHMA had "performed the contract, and furnished labor and materials which were incorporated into the Properties, and which improved the Properties." Ex. 2. In its subsequent State Court Complaint KHMA again alleges that it "completed *all* of its contractual obligations to Defendant WILSON in connection with the Project." Ex. 3 at ¶ 9 (emphasis added). Pursuant to the plain terms of the Contract, KHMA had agreed to see the

5

Project through to completion, and KHMA was to provide, among other things "construction administration."  Ex. 1 at p. 2; *see* USDC Complaint at ¶ 19 (alleging that the parties acted "with the intent that KHMA would remain the Project's Architect of Record until the Project's completion. . . .").  Having asserted that it completed *all* of its contractual obligations, including construction administration, KHMA cannot deny that the Project was constructed prior to KHMA's July 8, 2011 application for mechanics' lien.[4]  Wilson agrees that construction on the Project had reached substantial completion at or around the time that KHMA left the job, and prior to KHMA filing its mechanics' lien application on July 8, 2011.  Wilson, however, disagrees with any allegation that KHMA competently completed all of the services that it promised Wilson under the Contract.

Although the construction was substantially complete, unfortunately KHMA abandoned the Project prior to obtaining all permits necessary for Wilson to obtain its certificate of occupancy.  Wilson therefore had no choice but to retain a new architect to assist with obtaining a permit for the enclosed stairwell.  USDC

---

[4] KHMA deceivingly pleads that "WILSON continued to copy and use KHMA's Copyrighted Works to complete construction of the Project after KHMA's termination. . . ."  USDC Complaint at ¶ 21.  But this conclusory allegation cannot be reconciled with KHMA's conflicting allegation that KHMA completed *all* work that it was required to complete under the Contract, including construction administration, and therefore need not be accepted as true.  Construction on the Project in fact reached substantial completion by April 29, 2011—what remained thereafter was for Wilson to obtain a permit for the stairwell (an item that would not have been necessary had KHMA competently performed its duties in the first place).

Complaint at ¶¶ 24-26.  As is reflected in public record[ documents, Pacific Asia Design Group applied for a permit for the enclosed stairwell, and submitted plans to DPP, on **September 20, 2011**.  Ex. 5.  Pacific Asia Design Group's plans were then signed by an independent third party review representative on *October 20, 2011*, and certain pages of the plans show that *DPP had reviewed and commented on the plans by October 21, 2011.  Id.*

When KHMA abandoned the Project and filed its application for mechanic's lien (July 8, 2011), KHMA knew that Wilson still needed to obtain a permit for the enclosed stairwell.  *See* Ex. 2 at page 3, paragraph 6 of Exhibit "C" thereto (in connection with its **July 8, 2011** mechanic's lien application, KHMA asserts a right to payment for, among other things, work conducted in preparing "drawings for permit" for the stairwell, and notes that "[t]his item is still open. . . .").  KHMA had actual and/or constructive knowledge of the fact that Pacific Asia Design Group had prepared plans for the stairwell no later than September 20, 2011, the day that Pacific Asia Design Group's plans were submitted to DPP and thereby made public record.

KHMA's Complaint in this action was filed on October 21, 2014.  KHMA's claims are barred by the three-year statute of limitations, and are wholly frivolous in any event.  Where, like here, an architect provides drawings to a client with the intent that those drawings be used to obtain permits and construct the building in

question, the client has the right to obtain permits and construct the building without being subject to a copyright claim.

## III.   LEGAL STANDARD

Under FRCP Rule 12(b)(6), dismissal is appropriate where the complaint fails to state a claim upon which relief can be granted.  "A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted). Review is limited to contents of the complaint, and allegations of fact in the complaint are construed in the light most favorable to the plaintiff.  *See Newcomb v. Cambridge Home Loans, Inc.*, 861 F. Supp. 2d 1153, 1159 (D. Haw. 2012). However, "bare assertions" or conclusory allegations amounting to no more than mere formulaic recitations of basic elements of a claim "are not entitled to an assumption of truth," and should be dismissed.  *Id.* (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)).

To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is

insufficient.  *Id*. (quoting *Twombly*, 550 U.S. at 555).  Any legal conclusions must be supported by factual allegations for the complaint to survive a motion to dismiss.  *Id*.  "When a complaint fails to adequately state a claim, such deficiency should be 'exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Gamiao v. Bank of Am.*, 10-00311 DAE/KSC, 2011 WL 839757, at *2 (D. Haw. Mar. 4, 2011) (quoting *Twombly*, 550 U.S. at 558).

If a court dismisses a complaint, it must consider whether or not to grant leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (noting that "district courts are only required to grant leave to amend if a complaint can possibly be saved[ ]").  When it is clear that the complaint lacks merit, which leave to amend cannot cure, the complaint should be rejected and dismissed.  *Id.*

## IV.   ARGUMENT

### A.   KHMA's Claims Are Barred by the Three-Year Statute of Limitations.

KHMA has asserted two causes of action, both of which arise under Title 17 of the United States Code, and both of which are governed by a three-year statute of limitations.  "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  A cause of action under Title 17 accrues "when one has knowledge of a violation or is chargeable with such knowledge."  *Roley v. New World Pictures,*

*Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) (citing *Wood v. Santa Barbara Chambers of Commerce, Inc.,* 507 F. Supp. 1128, 1135 (D. Nev. 1980)).

### 1.   Count I of the Complaint Is Time-Barred.

Count I of KHMA's Complaint is based on the assertion that "WILSON continued to copy and use KHMA's Copyrighted Works to complete construction of the Project after KHMA's termination, without advising KHMA of its intent to do so, and without KHMA's permission."  USDC Complaint at ¶ 20; *see also* ¶ 23 (alleging that "the Project was built exactly as KHMA's Copyrighted Works specified. . . .").  KHMA, however, knew that the construction on the Project had reached substantial completion prior to KHMA's abandonment of the Project. KHMA indeed filed a mechanic's lien against the Project on ***July 8, 2011***, which asserted, among other things, that KHMA had fully performed and was entitled to full payment under the Contract.  Ex. 2.[5]  KHMA, nevertheless waited for more than three years, and did not file this action until October 21, 2014.  Count I is barred by the three-year statute of limitations.

### 2.   Count II of the Complaint Is Time-Barred.

Count II of KHMA's Complaint is based on the allegation that Wilson provided copies of plans created by KHMA to Pacific Asia Design Group, and that

---

[5] Lest there be any doubt about the fact that the project was constructed prior to October 21, 2011 (the three-year cut-off), the plans that were submitted for the stairwell permit (and were approved by DPP), show the building as an "EXISTING TWO STORY STRUCTURE WITH BASEMENT" and contemplate the enclosure of an "Existing Stair" as of September 20, 2011.  Ex. 5.

Pacific Asia Design Group removed KHMA's CMI and used those plans in order "to design the final staircase for the Project."  Complaint at ¶ 24.  Specifically, KHMA asserts that "Pacific did use KHMA's Copyrighted Works for its staircase plans for the Project, dated October 21, 2011," and that those plans were distributed "both to and from Defendant Wilson and the Honolulu Department of Planning and Permitting."  *Id.* at ¶¶ 25 and 26.

When KHMA abandoned the Project and filed its application for mechanic's lien (July 8, 2011), KHMA knew that Wilson still needed to obtain a permit for the enclosed stairwell.  *See* Ex. 2 at Exhibit "C" thereto (in connection with its ***July 8, 2011*** mechanic's lien application, KHMA asserts a right to payment for, among other things, work conducted in preparing "drawings for permit" for the stairwell, and notes that "[t]his item is still open. . . .").  Wilson did engage Pacific Asia Design Group to assist in obtaining a permit for the enclosed stairwell—and the permit application was publicly filed with the DPP ***on September 20, 2011***.  Ex. 5  The public record conclusively establishes that, assuming Pacific Asia Design Group removed KHMA's CMI to create its stairwell plans, it did so prior to submitting those plans to DPP on ***September 20, 2011***.  As is reflected in Exhibit 5 hereto, the title page on Pacific Asia Design Group's plans is stamped as accepted by DPP on ***September 20, 2011***, and was also signed by an independent third party review representative on *October 20, 2011*.  Certain subsequent pages in Exhibit 5

show that *DPP* had reviewed and commented on the plans by October 21, 2011.[6]

KHMA alleges that Pacific Asia Design Group's plans are "dated October 21, 2011." Complaint at ¶ 25. The public record, however, conclusively demonstrates that the plans were prepared and publicly filed with DPP well before October 21, 2011. DPP's October 21, 2011 comments on the plans are irrelevant to KHMA's claims.

Any reasonably diligent architect, knowing that a commercial project such as this could not be completed without a permit for this stairwell, would have known that Wilson would have no choice but to apply for the permit (KHMA had actual knowledge that the permit was still necessary). As KHMA alleges in its mechanics' lien application, by July 8, 2011 the Project was already built based on the drawings that KHMA had prepared. Any reasonable architect would also therefore have known that the permit drawing for the stairwell would have to match KHMA's drawings. KHMA either knew or should have known that Wilson's stairwell permit application would reflect KHMA's earlier drawings, and KHMA must be charged with knowledge of this alleged infringement no later than September 20, 2011, the date that Pacific Asia Design Group's stairwell permit

---

[6] If, and to the extent that, Pacific Asia Design Group later revised its plans pursuant to comments from the DPP, such revisions would have been made on the plans that Pacific Asia Design Group had already prepared and submitted to DPP. The alleged removal of KHMA's CMI, assuming for this motion that it occurred, took place prior to Pacific Asia Design Group submitting plans to DPP on September 20, 2011.

drawings were submitted to DPP and became public record.  KHMA did not file its claim until more than three years later.  Count II is barred by the three-year statute of limitations.

**B.    KHMA Granted Wilson a Nonexclusive License to Use the Subject Plans in Order to Complete the Project, and therefore Cannot Maintain this Action.**

Nonexclusive licenses "'may be granted orally, or may even be implied from conduct.'" *Effects Associates, Inc. v. Cohen,* 908 F.2d 555, 558 (9th Cir. 1990) (quoting 3 M. Nimmer & D. Nimmer, *Nimmer of Copyright* § 10.03[A], at 10–36 (1989)).  The Ninth Circuit has recognized that an implied license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work."  *Asset Marketing Sys., Inc. v. Gagnon,* 542 F.3d 748, 754–55 (9th Cir. 2008) (quotation marks and citation omitted).

Where the work is created for the construction of a specific project, like this case, "full payment is not a condition precedent to implying a license . . . ." *Frost-Tsuji Architects v. Highway Inn, Inc.*, Civ. 13-00496 SOM/BMK, 2014 WL 4237285, *11 (D. Haw. Aug. 26, 2014) (citing *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir. 1990) (recognizing, among other things, that "a condition precedent is disfavored and will not be read into a contract unless

required by plain and unambiguous language"). The plans at issue here were prepared specifically for the purpose of constructing the Project—there is nothing in KHMA's Contract or USDC Complaint to suggest anything to the contrary. Construction was in fact substantially completed while KHMA was still participating on the Project,[7] and Wilson paid KHMA nearly 97% of the amount agreed to under the Contract. KHMA cannot maintain a viable copyright claim based on the fact that the Project was constructed as contemplated, even if KHMA does ultimately prove (in its pending state court action) that it was not paid all that it believes it was owed.

In *Frost-Tsuji*, Judge Mollway applied Ninth Circuit precedent, and provided the following discussion with respect to the nonexclusive license that is granted by an architect's preparation of plans for an ongoing construction project:

> In *Foad Consulting Group v. Musil Govan Azzalino,* 270 F.3d 821 (9th Cir.2001), the Ninth Circuit held that a nonexclusive license to copy and modify architectural plans can be implied from the parties' agreement and conduct. That case involved facts similar to those presented here. Foad Consulting was hired by GenCom, Inc., to create a "preliminary Concept Development Plan" for a shopping center. GenCom submitted Foad Consulting's plans to the city of Arroyo Grande, California, for approval. After receiving that approval, GenCom transferred its rights to develop the project to Claire Enterprises, LLC, which, in turn, hired Hawkeye Investments, LLC, as the project developer. Hawkeye then hired Musil Govan Azzalino

---

[7] Any assertion by KHMA that the record is insufficient to show the date that the Project reached substantial completion is unavailing and irrelevant. Caselaw is clear that the implied license would continue to exist even if construction was completed subsequent to KHMA's abandonment of the Project.

to perform architectural and engineering services. Based on the documents prepared by Foad Consulting that the city had approved, Musil Govan prepared final plans for the project, copying much of Foad Consulting's work. Foad Consulting then contended that its copyrighted plans were being infringed. *Id* . at 824–25.

In examining the copyright claim, the Ninth Circuit noted that the owner of a copyright has the exclusive right to reproduce, adapt, publish, perform, and display a copyrighted work. *Id.* at 825 (citing 17 U.S.C. § 106). The court noted that the copyright holder may transfer any or all of these exclusive rights, but must do so in writing. *Id.* (citing 17 U.S.C. § 204(a)). The contract between Foad Consulting and GenCom did not transfer an exclusive right, but the writing requirement applies only to the transfer of exclusive rights. "[G]rants of nonexclusive copyright licenses need not be in writing." *Id.* The contract between Foad Consulting and GenCom granted GenCom "an implied license to use the revised plot plan to complete development of the project, to hire another firm to create derivative works using the revised plot plan for the purpose of completing the project, and to publish the resulting work." *Id.* at 826. GenCom also had an implied license to reproduce plans to build the project.

Examining the fee of $175,000 and the contract's requirement that Foad Consulting help with Gencom's application to the city, the Ninth Circuit said that "it would be surprising if the parties had intended for GenCom to seek Foad's permission before using the plans to build the project.... [N]owhere does the contract state that after the city had granted its approval, GenCom would need to obtain Foad's permission before commencing work." *Id.* at 828–29. The Ninth Circuit noted that not to find an implied license to continue to use the plans would allow architectural firms "to hold entire projects hostage, forcing the owner either to pay the firm off, continue to employ it, or forego the value of all work completed so far and start from scratch." *Id.* at 829 n.12.

The Ninth Circuit also determined in *Foad Consulting* that the contract granted GenCom an implied license to adapt the plans; nothing in the contract prohibited others from modifying the plans. *Id.* at 829. Instead, the contract contained language indicating that Foad Consulting would be indemnified in the event of liability arising out of others' modification of its plans. *Id.*

15

> Although California law applied in *Foad Consulting,* this court finds nothing in Hawaii law suggesting a different result. The only contract before this court is the December 2012 letter agreement. Like the agreement in *Foad Consulting,* the letter agreement contemplates Frost–Tsuji's creation of plans for the restaurant and Frost–Tsuji's assistance in obtaining building permits and other approvals. *See* ECF No. 56–4, PageID# 472. Highway Inn was to pay up to $97,500 under the terms of the letter agreement, and, as the Ninth Circuit noted in *Foad Consulting,* "it would be surprising if the parties had intended for [Highway Inn] to seek [Frost–Tsuji's] permission before using the plans to build the project." *Foad Consulting,* 270 F.3d at 828.

*Frost-Tsuji Architects*, 2014 WL 4237285 at *9-*10.   Pursuant to the above

discussion, the *Frost-Tsuji* Court recognized that the architect in that case had

granted the owner a non-exclusive license, and granted summary judgment in favor

of the owner even where the record was unclear regarding how much of the project

at issue had been built based on the architect's drawings at the time the architect's

agreement was terminated.   *Id.* at *5.   The *Frost-Tsuji* Court recognized that

"clearly, [the owner] paid for something," and "[t]o deny [the owner] a license to

use and adapt Frost-Tsuji's plans would allow Frost-Tsuji to hold the project

hostage until [the owner] paid a 'ransom' for the continued use of the plans."   *Id.* at

*10.

Like the *Foad Consulting* Court, the *Frost-Tsuji* Court also properly

recognized that "full payment [to the architect] is not a condition precedent to

implying a license," and the owner's "payment of a substantial amount constituting

well over half the maximum contract amount supports the implication of a license

16

to use and adapt the plans . . . even if [the owner] failed to pay all it owed." *Id.* at 11.

### 1. The Grant of a Non-Exclusive License Bars Count I of KHMA's Complaint.

This case falls perfectly in-line with both *Frost-Tsuji* and *Foad Consulting*. KHMA's Contract was expressly made for the purpose of designing "a two-story, 14,800 square foot type II, Adult Residential Care Home for 24 patients" to be "located at 96 Kaneohe Bay Drive, Kailua, Hawaii (TMK:4-4-01:09)." Ex. 1 at 1. KHMA's Complaint agrees that the plans in question were drawn specifically for this Project. USDC Complaint at ¶¶ 6-9 (*inter alia*, defining "Copyrighted Works" as "original plans, designs, and specifications **for the Project**") (emphasis added). The Contract also contemplates that KHMA would, among other things, assist with obtaining necessary permits and provide assistance through the actual completion of construction. Ex. 1 at p. 2 ("Phase Two" work).

There is nothing—anywhere—to suggest that the parties intended that the Project plans were to be held captive by KHMA, such that Wilson would have to ask for additional permission before using those plans to construct the Project or to obtain necessary permits. The Contract doesn't even hint at a suggestion that KHMA intended to even assert ownership over the plans that it was preparing for Wilson. Instead, the Contract contemplates that KHMA would "[p]repare construction documents (drawings and specifications) for permit and construction."

17

Ex. 1 at p. 2.  The only reasonable interpretation of this language is that KHMA's drawings were expressly intended to be used for the "*permit[ting] and constructi[ng]*" of the Project.[8]

In exchange, Wilson agreed to pay $240,000 for KHMA's plans and other services, and in fact *paid no less than $232,047.43* (nearly 97% of the Contract amount).  Ex. 3 at ¶ 15.  And, as KHMA's admissions in its State Court pleadings establish, the Project was actually constructed prior to KHMA leaving the Project and filing its mechanics' lien application.  KHMA cannot in good faith maintain a claim based on an allegation that Wilson was not supposed to use KHMA's drawings to construct the Project, where KHMA itself was responsible for and did provide construction administration services.  The allegation that KHMA did not receive full payment for services rendered, even if true, does not give rise to a copyright claim.  *See I.A.E., Inc. v. Shaver*, 74 F.3d 768, 778 (7th Cir. 1996) (noting that "nothing in the contract or in Mr. Shaver's later letter indicates that full payment was a condition precedent to the use of his drawings.").

---

[8] Many architects' agreements, such as the AIA "standard form" that was discussed in the *Frost-Tsuji* case, contain language expressing an intent that all plans and drawings are to remain under the ownership of the architect.  Here, KHMA chose to not use such language, and simply expressed an intent that it would provide construction documents as necessary for the permitting and construction of the Project.  There is a question as to whether KHMA is even the rightful "owner" of the drawings at issue, but that question need not be reached, because the Complaint and public record documents demonstrate, as a matter of law, that KHMA at a minimum granted Wilson a license to use, distribute, and/or copy the documents as necessary to complete the permitting and construction of the Project.

This Court can and should find, as a matter of law and based on the face of the pleadings and the public record, that KHMA intended to and did, at a minimum, provide Wilson with a nonexclusive license to use, distribute, and/or modify the plans in question as necessary to complete the Project.   KHMA's copyright claims fail on their face, and must be dismissed with prejudice.

### 2.   The Grant of a Non-Exclusive License Bars Count II of KHMA's Complaint.

Count II of KHMA's Complaint asserts a violation of 17 U.S.C. § 1202(b)(1), which states:

> No person shall, without the authority of the copyright owner or the law—
> (1) intentionally remove or alter any copyright management information knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

This provision has been read as containing three elements:

> To state a claim for removal of [copyright management information] under 17 U.S.C. § 1202(b)(1), a plaintiff must allege that a defendant: (1) without authority of the copyright owner or the law; (2) intentionally removed or altered [copyright management information]; (3) knowing or having reasonable grounds to know that the removal will induce, enable, facilitate, or conceal an infringement of the federal copyright laws.

*Imageline, Inc. v. CafePress.com, Inc.,* CV10-9794 PSG MANX, 2011 WL 1322525, *6 (C.D. Cal. Apr. 6, 2011) (citing 17 U.S.C. § 1202(b)(1)).   As discussed above, KHMA granted Wilson a nonexclusive license to use, copy, and distribute the plans created by KHMA as necessary to complete the Project.

Where Wilson had a license to use the drawings, Pacific Asia Design Group's alleged removal of copyright management information from those drawings in order to obtain a stairwell permit, even if true, cannot be shown to have been in connection with any possible infringement of the federal copyright laws.[9]  As a matter of law, KHMA has not pled facts sufficient to support the third element of its claim, and Count II of KHMA's Complaint does not state a viable cause of action against Wilson.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice, and enter judgment in favor of Wilson on all counts.

DATED:  Honolulu, Hawai'i, November 25, 2014.

_s/ Andrew J. Lautenbach_
TERENCE O'TOOLE
ANDREW J. LAUTENBACH
Attorneys for Defendants WILSON CARE HOME
KAILUA, LLC

---

[9] Wilson acknowledges the fact that the _Frost-Tsuji_ Court did not grant summary judgment with respect to the architect's CMI claim in that case.  The owner in that matter, however, sought summary judgment based only on affidavits of three representatives that said that they did not remove the CMI.  Wilson's position is different.  Even if Wilson or its agent did remove the CMI from plans drawn by KHMA, as alleged, that does not give rise to a claim under 17 U.S.C. § 1202 where Wilson had a license to use those plans as necessary to obtain its permit.